# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

William Hix,

                    Plaintiff,

                                        Case No. 1:21-cv-4541-MLB

v.

Acrisure Holdings, Inc.,

                    Defendant.

_____/

Acrisure Holdings, Inc. and
Acrisure, LLC,

                    Counterclaim
                    Plaintiffs,

v.

William Hix,

                    Counterclaim
                    Defendant.

_____/

## __OPINION & ORDER__

In 2015, Acrisure, LLC bought PentaRisk Insurance Services, LLC
(an insurance brokerage) from William Hix.  As part of the deal, Hix
became an employee of Acrisure, LLC and acquired shares in Acrisure

Holdings, Inc. (Acrisure, LLC's parent company).  Acrisure, LLC later fired Hix for artificially inflating PentaRisk's revenue, stealing client checks, and charging personal expenses to the company.  Acrisure Holdings also took back Hix's shares—without paying for them—to cover some of the losses attributable to his misconduct.  Hix sued Acrisure Holdings for misappropriating his shares.  Acrisure, LLC and Acrisure Holdings (together, "Acrisure") countersued Hix for his misconduct as an employee.

This Order is about the counterclaims.  There are nine of them: breach of fiduciary duty, breach of the contract governing Acrisure's purchase of PentaRisk, breach of Hix's employment contract, fraud, unjust enrichment, civil theft, injunctive relief, punitive damages, and attorneys' fees.  Hix moves to dismiss all nine counterclaims.  (Dkt. 10.) The Court grants Hix's motion in part and denies it in part.

## I.   Background[1]

Hix established PentaRisk in 2012.  (Dkt. 4 at 16.)  He owned most of the company and served as its Chief Executive Officer.  (*Id.* at 17.)  In

---

[1] The following recitation of facts is an oversimplification.  But it is sufficient for the purposes of this Order.

2015, he sold PentaRisk to Acrisure, LLC pursuant to an Asset Purchase Agreement ("APA").  (*Id.*)  He agreed to stay on as PentaRisk's Chief Executive Officer pursuant to an Employment Agreement with Acrisure, LLC.  (*Id.*; Dkt. 8-2 § 1.)  PentaRisk ultimately became a d/b/a of Acrisure, LLC and everyone who continued working there (including Hix) became an Acrisure, LLC employee.  (Dkt. 4 at 12, 16 n.2, 17.)

The APA required Acrisure, LLC to pay Hix most of the purchase price around the time of closing.  (Dkt. 8-1 §§ 2.1–2.2.)  But it provided for additional payments over the next three years if PentaRisk's "Adjusted EBITDA" exceeded threshold amounts identified in the APA.  (*Id.* § 2.6(a).)[2]  Acrisure claims Hix fraudulently inflated PentaRisk's Adjusted EBITDA to trigger these additional payments.  Hix allegedly did this by counting unpaid revenue (totaling $865,000) from three clients towards the Adjusted EBITDA for 2016–2017.  (Dkt. 4 at 20–31.) According to Acrisure, Hix "knew that the revenue . . . would not be paid" but counted it anyway.  (*Id.* at 26, 29, 31.)  This caused Acrisure, LLC to

---

[2] "EBITDA" means "earnings, determined in accordance with GAAP, before interest, income taxes, depreciation and amortization."  (Dkts. 4 at 20; 8-1 at 46.)

pay Hix millions of dollars more than he was entitled to under the APA. (*Id.* at 23–24; *see* Dkt. 1-1 at 19.)

From December 2018 through August 2020, Hix also took several client checks worth $1.2 million and deposited them in "secret bank accounts that were unknown to, and beyond the control of, Acrisure." (Dkt. 4 at 31–37.)  The checks were "insurance premium payments due to carriers as well as other client funds due to Acrisure"—and they were all addressed to PentaRisk.  (*Id.* at 31–32.)  Hix was able to deposit them for himself because his "Secret Bank Accounts included the name PentaRisk in the account name."  (*Id.* at 32.)  Acrisure claims Hix used the funds "for his own financial enrichment."  (*Id.* at 32–37.)

Finally, "by August 2020," Hix tricked Acrisure into paying for two pilots for his personal jet.  (*Id.* at 37–38.)  He did this by including the pilots on Acrisure's payroll and by falsely listing them as "Claims" employees on Acrisure's records.  (*Id.*)  Acrisure paid the pilots at least $180,000 as a result.  (*Id.*)  The pilots never did any work for Acrisure, claims-related or otherwise.  (*Id.* at 38.)

In September 2020, Acrisure, LLC terminated Hix for falsifying PentaRisk's revenue, stealing client checks, and charging expenses for

personal pilots to the company (together, "Alleged Misconduct"). (*Id.* at 38.) Acrisure Holdings also took back Hix's shares in the company (worth at least $7.6 million) without paying him anything in return. (*Id.* at 39–40.) Acrisure Holdings said it did this to "offset . . . the financial obligations Hix owed to Acrisure for his fraudulent and wrongful acts." (*Id.* at 14.)

Hix sued Acrisure Holdings for civil theft based on the company's appropriation of his shares, for a declaratory judgment that Acrisure must pay for the shares, and for attorneys' fees. (Dkt. 1-1.) Both Acrisure entities countersued Hix for breach of fiduciary duty (Count 1), fraud (Count 4), unjust enrichment (Count 5), civil theft (Count 6), permanent injunctive relief (Count 7), punitive damages (Count 8), and attorneys' fees (Count 9)—all based on Hix's Alleged Misconduct. (Dkt. 4 at 40–46.) Acrisure, LLC also countersued for breach of contract (Counts 2–3). (*Id.* at 41–42.) Hix now moves to dismiss the counterclaims for failure to state a claim. (Dkt. 10.)

## II.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Id.*  This requires more than a "mere possibility

of misconduct." *Id.* at 679.  Plaintiff's well-pled allegations must "nudge[]

[his] claims across the line from conceivable to plausible." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).

## III.  Discussion[3]

### A.    Breach of Fiduciary Duty (Count 1)

Count 1 claims Hix breached his fiduciary duties to Acrisure by

engaging in the Alleged Misconduct.  (Dkt. 4 at 40.)  Hix says this claim

---

[3] The parties' briefing overwhelmingly treats Acrisure, LLC and Acrisure
Holdings as a single entity.  So the Court takes the same approach in its
analysis.  The Court also disregards several arguments raised by the
parties only in a perfunctory manner, in footnotes, or in a reply brief.  *See
Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir.
2019) ("For an issue to be adequately raised in [a] brief, it must be plainly
and prominently raised and must be supported by arguments and
citations to the record and to relevant authority."); *Pinson v. JPMorgan
Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We
do not ordinarily consider arguments raised in passing in one footnote
rather than the body of the brief"); *United States v. Coy*, 19 F.3d 629, 632
n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief
are not properly before a reviewing court.").  Finally, this Order focuses
on the parties' most significant arguments and gives short shrift—often

should be dismissed because he did not owe fiduciary duties to Acrisure and Georgia's economic loss rule bars relief.  (Dkts. 10-1 at 8–10; 22 at 3–6.)  The Court disagrees.

### 1.    Fiduciary Relationship

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties."  *Rigby v. Flue-Cured Tobacco Co-op.*, 755 S.E.2d 915, 925 (Ga. Ct. App. 2014).  An employee-employer relationship typically does not create a fiduciary relationship.  *Physician Specialists in Anesthesia, P.C. v. Wildmon*, 521 S.E.2d 358, 360 (Ga. Ct. App. 1999).  But it can if the employee also functions as the employer's agent.  *Id.*   An agency relationship exists where the employee has "authority, real or ostensible, to create obligations on behalf of his [employer], bringing third parties into contractual relations with it."  *Id.*

Acrisure (employer) plausibly alleges Hix (employee) had this authority.  Hix's Employment Agreement made him responsible for "the

---

no shrift at all—to arguments that obviously lack merit.  *See, e.g., Duren v. Hopper*, 161 F.3d 655, 667 n.16 (11th Cir. 1998) ("All other arguments are without merit and warrant no discussion."); *Palciauskas v. U.S. I.N.S.*, 939 F.2d 963, 966 n.4 (11th Cir. 1991) ("Petitioner presents several other arguments that are without merit and warrant no discussion.").

solicitation and sale of insurance policies and related products and services *on behalf of [Acrisure]*." (Dkt. 8-2 § 5.)  On its face, this gave Hix the authority to act "on behalf of" his employer and to "bring third parties into contractual relations with it." *Physician Specialists*, 521 S.E.2d at 360.  Indeed, it is well established that an agency relationship exists where an employee has "authority to solicit [and sell] business" for his employer.  *Sitton v. Print Direction, Inc.*, 718 S.E.2d 532, 539 (Ga. Ct. App. 2011) (agency relationship existed where employee "had authority to solicit business on [employer's] behalf and to bind [employer] for certain obligations"); *see Nilan's Alley, Inc. v. Ginsburg*, 430 S.E.2d 368, 369 (Ga. Ct. App. 1993) (employee was his employer's "agent for soliciting offers to purchase [the employer's] products").[4]

Acrisure also "entrusted [Hix] with significant financial responsibility and authority," which further suggests an agency

---

[4] *See also Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 786 (Ga. Ct. App. 2012) (agency relationship existed where employee "solicited and reviewed bids on [employer's] behalf and was tasked with making recommendations on such bids"); *Hanson Staple Co. v. Eckelberry*, 677 S.E.2d 321, 323 (Ga. Ct. App. 2009) (agency relationship existed where employee "had the power to negotiate purchase orders [with customers] and authorize the purchase of supplies," even though he "could not execute contracts or enter into purchase orders on behalf of [his employer]").

relationship. *Benson v. McMillan*, 581 S.E.2d 707, 710 (Ga. Ct. App. 2003). Hix was the Chief Executive Officer (or manager) of the PentaRisk branch of Acrisure. (Dkts. 4 at 17; 8-2 § 1.) He was "responsible for the oversight of all accounting, contracting, insurance brokerage, and other matters handled by [PentaRisk] staff," including "contract negotiations with . . . clients," "invoicing clients," and "processing client payments." (Dkt. 4 at 18.) Courts have cited less authority than this as indicative of an agency relationship. *See Wright*, 726 S.E.2d at 786 (agency relationship existed where employee "reviewed applications for payment to verify the work accomplished, and [employer] relied on his approval to pay"). Given the record here, the complaint adequately pleads an agency—and thus fiduciary—relationship between Acrisure and Hix.[5]

---

[5] Although the pleading in which Acrisure asserts its counterclaims is technically a "counterclaim," not a "complaint," the Court refers to it as a complaint throughout this Order. Doing so reads better. And "the pleadings are substantively the same." *Agarwal v. Catanzarite*, 2008 WL 11504521, at *3 n.1 (N.D. Ohio Jan. 18, 2008) ("A complaint is a pleading by which the plaintiff in a civil action sets out the cause of action against the defendant, while a counterclaim is a pleading by which the defendant in a civil action states a counter demand or cause of action against the plaintiff.").

### 2.   Economic Loss Doctrine

"The economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 608 S.E.2d 636, 637 (Ga. 2005).  But the rule "does not preclude a tort claim based on an extra-contractual duty of care" such as a claim for breach of fiduciary duty.  *Norred & Assocs., Inc. v. ADP Inc.*, 2020 WL 10576414, at *5 (N.D. Ga. Sept. 17, 2020); *see Parris v. 3M Co.*, 2022 WL 976007, at *10 (N.D. Ga. Mar. 30, 2022) ("[T]he rule has no application where the defendant breaches a duty imposed by law or arising from a special relationship.").  Indeed, Hix explicitly concedes "the existence of a fiduciary duty is an exception to [the economic loss] rule."  (Dkt. 22 at 5.)  The Court has already concluded Hix owed fiduciary duties to Acrisure.  So the economic loss rule does not bar relief here.

### 3.   Conclusion

Hix has not shown Acrisure's claim for breach of fiduciary duty should be dismissed at this stage.  So Count 1 can proceed.[6]

---

[6] Hix briefly argues that, even if he owed fiduciary duties to Acrisure, he did not breach those duties or proximately cause any damages.  (Dkt. 10-

## B.    Breach of Contract (Count 2)

Count 2 claims Hix violated the APA by artificially inflating PentaRisk's revenue and using "Secret Bank Accounts [that] included the name PentaRisk in the account name." (Dkts. 4 at 31–32, 41; 20 at 18.) Hix says this claim should be dismissed because (1) Hix's alleged conduct did not violate the APA and (2) the APA bars Acrisure from litigating the claim in federal court. (Dkts. 10-1 at 10–13; 22 at 6–8.) The Court agrees.

### 1.    Breach of the APA

Count 2 first claims Hix's revenue inflation violated Section 2.6(a) of the APA. (Dkt. 20 at 18.) But, as Hix points out, Section 2.6(a) only imposes obligations on *Acrisure* (to pay if PentaRisk's EBITDA is high enough); it requires nothing of *Hix*. (*See* Dkt. 8-1 § 2.6(a).) And no one suggests it imposes an implied duty either. So, "there being no contractual duty [for Hix], there was no breach of that duty." *Indep. Ord. of Foresters v. Ashe*, 2013 WL 12063908, at *3 (N.D. Ga. Dec. 19, 2013).[7]

---

1 at 9–10.) But his argument is myopic, unsupported, and unpersuasive. Indeed, he does not even address it in his reply brief. (Dkt. 22 at 3–6.)

[7] The parties dispute (though only in footnotes) whether Georgia law or Michigan law governs Acrisure's breach of contract claims. (*See* Dkts. 10-1 at 9 n.4; 20 at 18 n.5; 8 n.6.) The Court need not resolve the issue because the outcome here would be the same regardless.

Acrisure next claims Hix violated Section 1.1 of the APA by using bank accounts with the word "PentaRisk" in the account name. (Dkt. 20 at 18.) The Court disagrees. In Section 1.1, Hix "agree[d] to sell, convey, transfer, assign, grant and deliver to [Acrisure] . . . all rights to the names 'PentaRisk Holdings,' 'PentaRisk Associates,' 'PentaRisk Insurance Services' and derivatives thereof, and all goodwill and going concern value associates with the Business." (Dkt. 8-1 § 1.1(i).)[8] No one disputes Acrisure now owns the PentaRisk name and enjoys its goodwill. So Hix apparently did what he agreed to do: he gave Acrisure "all rights to the [PentaRisk] name[]," whether or not he later infringed those rights. Moreover, it is not at all clear Hix *did* infringe those rights. The right to a business name essentially prevents others from using that name to mislead the public about their connection to the business. But Acrisure never really explains how the PentaRisk-named bank accounts tricked the public in this way. Indeed, it is not clear anyone outside the bank even knew the account names. Given the record here—including the absence of any meaningful argument or citation to authority from

---

[8] Actually, PentaRisk—not Hix—agreed to do this. But no one raises this distinction or claims it matters. So the Court assumes it does not.

Acrisure—the Court finds Count 2 does not allege a plausible violation of the APA.

### 2.    Litigation Bar

Even if Acrisure had pled a plausible breach of the APA, Count 2 would still fail because the APA bars the parties from litigating the claim in federal court.  Section 6.1 requires Hix to "indemnify" Acrisure for "any breach or nonperformance by [Hix] of any agreement or covenant of [Hix] contained in [the APA]."  (Dkt. 8-1 § 6.1.)  Section 6.4 establishes the "exclusive procedure" for resolving indemnification claims, which includes (1) timely written notice of the breach, (2) an investigation period, and, if necessary, (3) arbitration.  (*Id.* § 6.4.)  Section 6.7 requires the parties to arbitrate "any dispute, claim or controversy arising out of or relating to" these provisions.  (*Id.* § 6.7(a).)  Section 6.8 says the APA's indemnification scheme is (1) "the sole and exclusive means of recovery . . . for any claim for any . . . breach, or alleged breach, of the [APA]"; and (2) "in lieu of any other common law, equitable or statutory rights or remedies."  (*Id.* § 6.8.)  And Section 6.7 explicitly bars the parties from pursuing litigation: "no Party will commence or voluntarily participate in any court action or proceeding concerning an

Indemnification Dispute." (*Id.* § 6.7(e).)  Section 7.14 also requires the parties to arbitrate "[a]ny [other] controversy or claim arising out of or relating to" the APA.  (*Id.* § 7.14.)

Count 2 cannot survive these provisions.  The APA's indemnification scheme is "the sole and exclusive means of recovery" for breach of the APA.  That scheme bars litigation.  So Count 2—which asserts a breach of the APA—cannot be litigated.  Moreover, Count 2 falls squarely within Section 6.1 because it asks Hix to "indemnify" Acrisure for "breach . . . by [Hix] of [the APA]."  It thus triggers the "exclusive" dispute resolution procedure in Section 6.4, which does not contemplate litigation.  Finally, even if Count 2 was not strictly a claim under Section 6.1, it is at least "relat[ed] to" the APA's indemnification provisions—which means it must be arbitrated rather than litigated per Section 6.7.  Indeed, under Section 7.14, the APA would still require arbitration (not litigation) even if Count 2 had *nothing* to do with indemnification.  (*See* Dkt. 20 at 19–20.)

Acrisure counters that Hix waived these provisions by "failing to move to compel arbitration" and by "filing his claims in court."  (*Id.* at 20 & n.7.)  But Acrisure asserts this argument only in a footnote and in two

sentences in its response brief.  That is insufficient.  "The Court generally does not consider arguments raised in a footnote."  *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2020 WL 13104165, at \*4 n.2 (M.D. Fla. Aug. 10, 2020).  And the remainder of Acrisure's waiver argument is "perfunctory and undeveloped."  *Roberts v. Martin's Rest. Sys., Inc.*, 2006 WL 8432675, at \*32 n.38 (N.D. Ga. Aug. 3, 2006).  For example, it does not specifically tie Hix's alleged waiver to Count 2 or explain how Hix's *non*-indemnification claims waived the APA's indemnification provisions.  It does not address the APA's "non-waiver" provision, which says "[n]o waiver shall be effective unless it is in writing and duly executed by an authorized representative of the waiving part."  (Dkt. 8-1 § 7.5.)  It ignores the APA's explicit litigation bar.  And it cites only one case before (briefly) addressing only one prong of the two-prong test established in that case.  (*See* Dkt. 20 at 20 (citing *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018).)  Acrisure simply does not "flesh out" or "support" its waiver arguments with "sufficient detail."  *Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 n.16

(11th Cir. 2021); *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 811 (11th Cir. 2015).  So the Court declines to consider them.[9]

### 3.    Conclusion

Count 2 does not allege a plausible breach of the APA and, even if it did, the APA bars Acrisure from litigating the claim in federal court. Count 2 is thus dismissed.

### C.    Breach of Contract (Count 3)

Count 3 claims Hix violated his Employment Agreement with Acrisure by "asserting fraudulent revenue, taking client funds for his own financial enrichment, and . . . facilitating or causing the movement of clients away from Acrisure." (Dkt. 4 at 42.)  Hix says this claim should be dismissed because (1) Acrisure does not allege a plausible breach of the Employment Agreement and (2) the claim is untimely under the

---

[9] *See Tymar Distribution LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1289 n.7 (S.D. Fla. 2021) ("It is simply not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Makita U.S.A., Inc. v. Factory Direct Distributors LLC*, 2014 WL 12605510, at *1 (S.D. Fla. Aug. 6, 2014) ("When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased.").

limitations period established in the Agreement.  (Dkts. 10-1 at 14–15; 22 at 8–9.)  The Court agrees.

### 1.      Breach of the Employment Agreement

Count 3 first claims Hix violated the "non-competition and non-solicitation" provisions of his Employment Agreement.  (Dkt. 8-2 § 12(b); *see* Dkt. 20 at 21.)  But, as Hix points out, the complaint offers nothing but vague and conclusory allegations in support of this claim.  All it says is Hix "directly and/or indirectly facilitat[ed] or caus[ed] the movement of clients away from Acrisure."  (Dkt. 4 at 38, 42.)  It does not identify any specific clients, explain how Hix "move[d]" them away, or describe any resulting harm.  This falls well short of pleading a plausible breach.

Acrisure next claims Hix violated Section 9 of the Employment Agreement.  (Dkt. 20 at 21.)  But that provision simply defines the conduct for which Acrisure could terminate Hix for "Good Cause."  (Dkt. 8-2 §§ 8(a)(ii), 9.)  It does not actually prohibit Hix from engaging in the conduct.  And no one has argued it does so on some sort of implied theory.  So, again, "there being no contractual duty [for Hix], there was no breach of that duty."  *Ashe*, 2013 WL 12063908, at *3.

## 2.   Limitations Period

"Parties are generally allowed to contract for a shorter limitations period than that provided by statute." *Farris v. Celebrity Cruises, Inc.*, 487 F. App'x 542, 544 (11th Cir. 2012).  The Employment Agreement does that here.  It says claims "regarding a breach" of the Agreement "shall be . . . brought, if at all, within one hundred eighty-two (182) calendar days of the event giving rise to the dispute." (Dkt. 8-2 § 16(c).)  Otherwise, the claim is "absolutely barred."  (*Id.*)

Hix's latest alleged misconduct occurred in August 2020 (or September 2020 at a push).  (*See* Dkt. 4 at 37–38, 43.)  Acrisure did not assert Count 3 until November 2021, more than 182 days later.  (Dkt. 4.)  So Count 3 is "absolutely barred" under the plain language of the Employment Agreement.  The "face of the complaint" supports this conclusion.  *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (dismissal appropriate when "it is apparent from the face of the complaint that the claim is time-barred").[10]

---

[10] Acrisure points out that, under the express terms of the Employment Agreement, the 182-day limitations period does not apply to "disputes relating to . . . Restrictive Covenants."  (Dkt. 8-2 § 16(b).)  But, as explained above, Acrisure has not pled a plausible violation of the

### 3.   Conclusion

Count 3 does not allege a plausible breach of the Employment Agreement and, even if it did, the claim is time-barred under the limitations period established in that Agreement.   Count 3 is thus dismissed.

### D.   Fraud (Count 4)

Count 4 asserts a fraud claim based on Hix's "representations or omissions regarding PentaRisk revenue, the receipt of client funds, and the use of corporate assets." (Dkt. 4 at 43.)  Hix moves to dismiss this claim for failure to comply with Rule 9(b) and failure to plead justifiable reliance. (Dkt. 10-1 at 16–20.)  The Court grants Hix's motion in part.

### 1.   Rule 9(b)

Under Rule 9(b) of the Federal Rules of Civil Procedure, a party asserting a fraud claim must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  This means a complaint must set forth:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for

---

restrictive covenants in the Agreement.  So this exception does not save Count 3.

making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud.

*In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016).  In other words, "Rule 9(b) demands that Plaintiffs must actually plead the who, what, when, where, and how of specific misrepresentations that led them astray."  *Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 474 (11th Cir. 2016).  Failure to do so requires dismissal.  *See id.*; *In re Galectin Therapeutics*, 843 F.3d at 1269.

Hix says the complaint fails to plead with particularity that he fraudulently misrepresented PentaRisk's revenue. (Dkt. 10-1 at 16–17.) The Court agrees.  The complaint alleges Hix misrepresented "PentaRisk's revenue and Adjusted EBITDA" by "includ[ing] [unpaid] income" from three clients.  (*See* Dkt. 4 at 12, 21–26, 29, 31.)  And it spends a lot of time explaining why the representations were false, why Hix may have known that, and what he obtained as a result.  (*Id.* at 36-69.)  But it says little about when, where, how, and to whom the representations were made.  That is fatal.

20

Piecing things together, most of Hix's misrepresentations likely occurred in the five-month period between December 2017 and April 2018. (*See id.* at 27, 29.)  But even if that were right, this timeframe is too vague to satisfy Rule 9(b).  *See Altimas v. Whitney*, 2010 WL 11507317, at *3 (M.D. Fla. Dec. 9, 2010) ("[V]ague allegations concerning the time period of a defendant's allegedly fraudulent conduct are insufficient to satisfy Rule 9(b)'s heightened pleading standard.").[11]  We know PentaRisk's primary office was in Atlanta, its clients were scattered across several states, Acrisure's principal place of business was in Michigan, Hix's banks had branches in Atlanta, and Hix currently lives in Florida.  (*See* Dkt. 4 at 14–15, 17, 31–37.)  But none of this—or anything else in the complaint—tells us where Hix made his alleged misrepresentations or where Acrisure received them.  The complaint says nothing about "how [the misrepresentations] were communicated (orally or in which documents)."  *Centennial Bank v. Noah Grp., LLC*, 445 F. App'x 277, 278 (11th Cir. 2011).  And, while the misrepresentations were

---

[11] *See, e.g.*, *Tippens v. Round Island Plantation L.L.C.*, 2009 WL 2365347, at *4 (S.D. Fla. July 31, 2009) (allegation that misrepresentation occurred "just prior" to a specific date was too "general" to satisfy Rule 9(b)).

presumably made to *someone* at Acrisure, LLC or Acrisure Holdings, the complaint does not identify the recipient with any more specificity than that.  It is not even clear which Acrisure entity was involved, much less which department or employee.

The absence of this information creates another problem.  Without knowing more about the misrepresentations, the Court can only speculate about "the manner in which they misled [Acrisure]."  *In re Galectin Therapeutics*, 843 F.3d at 1269.  Notably, for the first few years after the APA, Acrisure "maintain[ed] separate books and records for [PentaRisk] and operate[d] the Business as a separate business unit" specifically so it could "determin[e] any Contingent Payments" due to Hix.  (Dkt. 8-1 § 2.6(d).)   And it was *Acrisure*—not Hix—that was responsible for calculating PentaRisk's Adjusted EBITDA and providing "a written determination[] with reasonable detail and supporting documentation."  (*Id.* § 2.6(b).)  If Acrisure controlled PentaRisk's "books and records," and used those records to determine PentaRisk's revenue, how did Hix's misrepresentation cause Acrisure to get the revenue wrong?  The complaint never says.  Not with particularity, anyway.

All of this is fatal under Rule 9(b). The Court thus dismisses Count 4 to the extent it claims Hix misrepresented PentaRisk's revenue. *See Centennial Bank*, 445 F. App'x at 279 ("Where a complaint does not set out the time, location, or method of communication of allegedly fraudulent statements, it does not satisfy Rule 9(b)."); *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 494 (11th Cir. 2009) (complaint violated Rule 9(b) because it "did not identify the time or *place* of the alleged fraudulent misrepresentations, nor did it aver . . . *to whom* they were made").[12]

To be clear, it seems like Acrisure has uncovered incredible detail regarding Hix's scheming to cheat and may even have him dead to rights on a fraud claim. But it has not pleaded those facts here. The Court

---

[12] *See also Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663–64 & n.2 (11th Cir. 2015) (complaint violated Rule 9(b) because "none of the allegations indicated the date, time, or place of any misrepresentation," "what material it appeared in," or what "medium" was used to make the representation); *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 638 (11th Cir. 2010) (complaint violated Rule 9(b) because it "failed to identify the time and place of th[e] omission"). Hix also claims that, because Count 4 relies on a few "information and belief" allegations, it fails to plead with particularity that Hix fraudulently concealed his theft of client checks. (Dkt. 22 at 10.) But Hix asserts this two-sentence argument only in his reply brief, which is insufficient. (*See id.*; Dkt. 10-1 at 16–17.) And, even considering the argument, it fails on the merits.

accepts Acrisure's well-pleaded allegations that Hix falsified agreements between PentaRisk and Clients A, B, and C for the sole purpose of inflating PentaRisk's Adjusted EBITDA in 2016 and 2017. The Court further accepts that Hix did this for the purpose of defrauding Acrisure into making contingent payments it was not otherwise obligated to make. But to move forward on its fraud claim, Acrisure is required to plead more detail about Hix's machinations—not his goal or his theft—but the steps he took to cause the false contracts to result in false EBITDA. Did Hix, for example, represent the false revenue to someone or cause another to do it? If so, when did he do that, to whom, or in what communication? Is there an internal accounting system into which he placed fraudulent information or caused another (wittingly or unwittingly) to place false information knowing that it would lead others (wittingly or unwittingly) to calculate false EBITDA during the contingent payment years? Did he in some other way make some false statement that caused inflated EBITDA? When did he do that and to whom? Having identified Hix's fraudulent plan (falsifying contracts to falsify EBITDA) and wrongful result (the fraudulent contingent payments), Acrisure is still required to allege the steps he took to get from the former to the latter.

### 2.    Justifiable Reliance

"Under Georgia law, a plaintiff must prove five elements to sustain a claim for fraud: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Creative Movement & Dance, Inc. v. Pure Performance, LLC*, 2017 WL 4998649, at *5 (N.D. Ga. July 24, 2017).

Hix claims the fourth element (justifiable reliance) is missing here. He says Acrisure unreasonably relied on Hix's misrepresentations about the client checks and the pilots because Acrisure could have discovered the truth if it looked closely enough at its "books and records." (*See* Dkts. 10-1 at 18–20; 22 at 12.)  But this is sheer speculation.  By the time Hix made these misrepresentations (December 2018–August 2020), Acrisure no longer "maintain[ed] separate books and records for [PentaRisk]." (Dkt. 8-1 § 2.1(d).)  And nothing in the complaint suggests any company record would have exposed the fraud, much less that it would have done so obviously or that it was the kind of record Acrisure should have reviewed before relying on Hix's representations.  Moreover, Acrisure made Hix "responsible for the oversight of all accounting, contracting,

insurance brokerage, and other matters" at PentaRisk. (Dkt. 4 at 18.) So it was arguably reasonable for Acrisure to rely on his representations about at least some of these matters without doing a deep dive into the company records to verify his assertions (or omissions). Indeed, PentaRisk "handled many of its own accounting functions" and "interfaced directly with its clients," which suggests a kind of structural or institutional deference to Hix (as PentaRisk manager) in the very areas where he allegedly defrauded the company. (*Id.*)

At the end of the day, "[w]hether a plaintiff could have protected itself by the exercise of due diligence is generally a question for the jury." *Liberty Cap., LLC v. First Chatham Bank*, 789 S.E.2d 303, 308 (Ga. Ct. App. 2016). And Hix has not shown that question should be taken away from the jury at this early stage of the case.[13]

---

[13] Hix asserts a grab bag of other arguments that also fall short. He claims his alleged misconduct is "equally likely to be lawful business conduct" or otherwise grounded in "good faith or mistake." (*See* Dkts. 10-1 at 18; 22 at 11–12.) But plausibility, not probability, is all that is required at this stage. And the complaint includes enough facts to support a plausible—that is reasonable—inference that he knowingly stole PentaRisk's client checks and lied about his personal pilots. Hix also says he had no "duty to disclose any alleged omissions" to Acrisure because he did not have a fiduciary relationship with the company. (Dkt. 10-1 at 19.) But the Court has already concluded the parties did have a

### 3.   Conclusion

Count 4 is dismissed to the extent it claims Hix fraudulently misrepresented PentaRisk's revenue to trigger additional payments from Acrisure.  It can otherwise proceed.

### E.   Unjust Enrichment (Count 5)

Count 5 claims that, through his Alleged Misconduct, "Hix has been unjustly enriched at the expense of and detriment to Acrisure."  (Dkt. 4 ¶ 113.)  Hix says this claim should be dismissed because Acrisure has not shown it lacks an adequate remedy at law.  (Dkt. 10-1 at 21.)  The Court agrees.

"Equity will grant relief only where there is no available adequate and complete remedy at law." *McGlashan v. Snowden*, 738 S.E.2d 619, 620 (Ga. 2013).  "Unjust enrichment is an equitable concept," and "the availability of money damages affords an adequate and complete remedy." *Id.*; *Morrell v. Wellstar Health Sys., Inc.*, 633 S.E.2d 68, 73 (Ga. Ct. App. 2006).  Thus, "the availability of any claim for money damages excludes a claim for unjust enrichment."   Ga. Contracts Law and

---

fiduciary relationship. So this argument is a nonstarter.  Hix's remaining arguments are either conclusory or obviously meritless (or both), so the Court declines to address them.

Litigation § 12:8 n.3 (2d ed.); *see Mungai v. Chase Bank USA, N.A.*, 2020 WL 10225827, at *4 (N.D. Ga. Aug. 4, 2020) ("Unjust enrichment is an equitable principle that applies only when there is no adequate remedy at law.").

*McGlashan* illustrates this principle well. There, a landowner hired builders to construct a house on his lot. The builders mistakenly constructed the house on his neighbor's lot instead. The landowner moved in anyway. The neighbor filed an ejectment action, seeking title to the house. The landowner countersued for unjust enrichment. The landowner also filed a third-party complaint against the builders, "seeking to recover from them the full value of [his] loss should he lose the ejectment action." 738 S.E.2d at 620. The trial court granted summary judgment to the neighbor on the landowner's unjust enrichment claim. The Georgia Supreme Court affirmed because the landowner had a potential remedy at law: damages from the builders.

> [The landowner's] third-party complaint against the allegedly-negligent builders of the home seeks monetary damages for [his] loss of the home should he lose the ejectment action filed by [the neighbor]. Since [the landowner] could recover money damages from the builders in this action, it would be inappropriate for the trial court to grant him equitable relief [under the doctrine of unjust enrichment].

*Id.* at 620–21.

Our case is similar.  Acrisure asserts several claims for the same "monetary damages"—based on the same conduct—as Acrisure's unjust enrichment claim.  These claims include breach of fiduciary duty, fraud, and civil theft.  As in *McGlashan*, it is not yet clear whether these claims will succeed.  But since they "could," and since Acrisure would "recover money damages" if they did, "it would be inappropriate" to let the unjust enrichment claim proceed.  *Id.*

Acrisure insists it can plead unjust enrichment "as an alternative" to other claims for damages.  (Dkt. 20 at 27–28.)  And that is true.  Indeed, "unjust enrichment *must* be pled as an alternative remedy" rather than "a separate tort."  *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 217 n.6 (Ga. Ct. App. 2020) (emphasis added).  The problem is Acrisure does not do that here.  To the contrary, its "unjust enrichment count also incorporates by reference all of the preceding allegations of the Complaint."  *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006) (dismissing unjust enrichment claim where plaintiff asserted the claim alongside an "inconsistent" claim "within a single count"); (*see* Dkt. 4 at 43).  This includes Acrisure's

allegation that it is entitled to "compensatory damages" based on Hix's breach of fiduciary duty—an allegation the Court has already concluded is well pled. (Dkt. 4 at 40–41.) "Given the incorporation of this allegation into the equitable count[], the equitable count[] cannot withstand the motion to dismiss." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009). Acrisure simply cannot claim within a single count that it is both entitled to damages for a fiduciary breach and without a remedy at law.

To sum up, "the availability of any claim for money damages excludes a claim for unjust enrichment." Ga. Contracts Law and Litigation § 12:8 n.3 (2d ed.). Acrisure asserts several claims for money damages, many of which are now moving forward to discovery. So there is no room for unjust enrichment here. Not unless Acrisure invokes the doctrine as an alternate theory of recovery, anyway. It has not done that. So Count 5 is dismissed. *See, e.g.*, *Hanover Ins. Co. v. Hermosa Const. Grp., LLC*, 57 F. Supp. 3d 1389, 1398 (N.D. Ga. 2014) ("Hanover's claim

for unjust enrichment is due to be dismissed" including because "Hanover has failed to allege that an adequate remedy at law does not exist").[14]

### F.    Civil Theft (Count 6)

Count 6 claims Hix's Alleged Misconduct constitutes civil theft under O.C.G.A § 16-8-1 et seq.  (Dkt. 4 at 44.)  This statute includes several theories of theft, and the complaint does not say which one it asserts.  But Hix moves to dismiss three theories: (1) theft by taking under Section 16-8-2; (2) theft by deception under Section 16-8-3; and (3) theft by conversion under Section 16-8-4.  (Dkt. 10-1 at 22.)  The Court grants Hix's motion in part.

---

[14] A related problem is that Acrisure "[does] not plead unjust enrichment as an alternate theory of recovery *based on a failed contract.*"  *Collins*, 849 S.E.2d at 216 (emphasis added).  Instead, it claims unreservedly that two "valid and binding contract[s]" (the APA and the Employment Agreement) govern the parties' relationship. (Dkt. 4 at 17, 41–42.)  And it does so in the very same count that it seeks damages for unjust enrichment. (*Id.* at 43.)  This, too, is fatal.  *See Huddle House, Inc. v. Two Views, Inc.*, 2013 WL 1390611, at *4 n.2 (N.D. Ga. Apr. 4, 2013) ("[W]here a party claims within a single count that an agreement existed and that the opposing party was unjustly enriched, the claim for unjust enrichment fails as a matter of law.");  *Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009) ("Because Wachovia Insurance asserts unjust enrichment as a separate tort and not an alternative theory of recovery for a failed contract, this claim fails as a matter of law.").

### 1.   Theft by Taking

"A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." O.C.G.A. § 16-8-2.  Hix claims he did not violate this provision when he used falsified revenue to trick Acrisure into paying him millions of dollars to which he was not entitled.  Hix's theory is simple: Acrisure "voluntarily" paid him this money, even if he deceptively induced the company to do so.  (Dkt. 10-1 at 22.)  And "voluntary payments cannot be theft by taking, as a matter of law." (*Id.*)

Hix is wrong.  All he cites is one parenthetical from a case about conversion (not theft by taking), which purports to summarize another case about the meaning of an insurance policy (not theft by taking).  The insurance policy in the second case covered "loss due to theft," but specifically excluded loss "resulting from someone causing you to voluntarily part with [property] by trick or scheme or under false pretenses." *W. Heritage Ins. Co. v. Newcastle Auto Sales, Inc.*, 547 S.E.2d 792, 793 (Ga. Ct. App. 2001).  This contractual exclusion has no analog

whatsoever in the statutory text here.  To the contrary, Section 16-8-2 expressly covers any unlawful taking "*regardless* of the manner in which the property is taken or appropriated."  As courts have repeatedly noted, this expansive language "renders the section sufficiently broad to encompass thefts or larcenies perpetrated by deception." *Byrd v. United Servs. Auto. Ass'n*, 729 S.E.2d 522, 524–25 (Ga. Ct. App. 2012).  And that means theft by taking occurs whenever someone "obtains property" from another—voluntarily or otherwise—"by any deceitful means or artful practice."  O.C.G.A. § 16-8-3; *see Jones v. State*, 224 S.E.2d 473, 475 (Ga. Ct. App. 1976) (theft by taking under Section 16-8-2, encompasses theft by deception under Section 16-8-3).[15]

Hix next claims Acrisure cannot sue him for stealing PentaRisk's checks because PentaRisk is "its own legal entity" and "any theft of PentaRisk property would create a claim in PentaRisk, not Acrisure."

---

[15] Thirty years ago, one Georgia court suggested (in dicta) that "theft or larceny includes no concept of mysterious disappearance or broken promise or false pretense." *Canal Ins. Co. v. Wilkes Supply Co.*, 416 S.E.2d 105, 107 (Ga. Ct. App. 1992).  But, as other courts have noted since, this view "contradicts prior Georgia case law . . . and the modern Georgia Criminal Code." *Martin v. Am. Fam. Home Ins. Co.*, 2006 WL 8433913, at *4 n.6 (N.D. Ga. Aug. 23, 2006).  So "the Court declines to follow its reasoning here." *Id.*

(Dkt. 10-1 at 23.)   But the complaint alleges PentaRisk is "a d/b/a of Acrisure, LLC."  (Dkt. 4 at 12).  And "[c]ourts have recognized that the designation 'd/b/a' does not work to create a distinct business entity." *Trustees of IBEW Loc. No. 7 Pension Fund v. DAW MAC Serv., Corp.*, 2014 WL 4656874, at *3 (D. Mass. Sept. 15, 2014); *see Sanya, LLC v. Patel*, 2007 WL 9701289, at *1 n.1 (N.D. Ga. Feb. 5, 2007) (distinguishing "an independent entity" from "only a d/b/a").  Nothing in the complaint suggests PentaRisk is an exception to this rule.  So Hix's argument fails.

Finally, Hix says Acrisure's pilot allegations do not show he took any property from the company.  (Dkt. 10-1 at 23.)  The Court agrees. Acrisure paid *the pilots*, not Hix.  It is not even clear Hix used the pilots. And, even if he did, the pilots' services were not "property" and thus could not be stolen.  *See, e.g.*, *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2003) ("[S]ervices are not property."); *United States v. Delano*, 55 F.3d 720, 727 (2d Cir. 1995) (same); *Turner Commc'ns Corp. v. Chilivis*, 236 S.E.2d 251, 253 (Ga. 1977) (discussing "Georgia cases . . . where sales of services are distinguished from sales of property").[16]

---

[16] There may be an argument that Hix *indirectly* took money from Acrisure by fraudulently inducing the company to make payments (to the

The Court dismisses Acrisure's theft-by-taking claim to the extent it is based on Hix's personal pilots.  The claim can otherwise proceed.

### 2.   Theft by Deception

"A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."  O.C.G.A. § 16-8-3(a).  Hix says the complaint fails to plead *with particularity* that he violated this provision when he inflated PentaRisk's revenue to obtain unwarranted payments from Acrisure.  (Dkt. 10-1 at 24.)  The Court agrees.  "[T]heft by deception is essentially fraud-based and must be pleaded with particularity" under Rule 9(b).  *Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*, 2010 WL 11601332, at *10 (N.D. Ga. Sept. 1, 2010); *see Eco Sols., LLC v. Verde Biofuels, Inc.*, 2011 WL 13135279, at *21 (N.D. Ga. Feb. 1, 2011).  The Court has already found that Acrisure's revenue-inflation allegations do not comply with Rule 9(b).  So they also fail to plead theft by deception.[17]

---

pilots) for which Hix otherwise would have been responsible.  But Acrisure never makes this argument.  In fact, it never makes *any* argument that its pilot allegations sufficiently plead theft by taking.

[17] Hix does not really dispute that Acrisure's allegations about the stolen checks and personal pilots adequately plead theft by deception.  He claims "the bulk of [Acrisure's] allegations are, at most, good-faith

### 3.   Theft by Conversion

"A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another . . . under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation." O.C.G.A. § 16-8-4(a).

Hix claims his misappropriation of PentaRisk's checks did not violate this provision because "money is not subject to a civil action for conversion." (Dkt. 10-1 at 25.) But "[c]onversion of *checks* is actionable because checks designate specific amounts of money for use for specific purposes." *Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 583 S.E.2d 6, 9 (Ga. 2003) (emphasis added). Indeed, the complaint alleges Hix stole specific, identified checks issued on specific dates from (relatively) specific clients for specific amounts that were earmarked for insurance carriers and Acrisure. (*See* Dkt. 4 at 32–37.) That is sufficient. *See*

accounting disputes." (Dkt. 10-1 at 24.) But the Court has already rejected that argument. And Hix's remaining arguments—largely asserted only in reply—warrant no discussion. So Acrisure's theft-by-deception claim can proceed to the extent it is based on the checks and pilots.

*Pullar v. Gen. MD Grp.*, 2013 WL 5284684, at *7 (N.D. Ga. Sept. 17, 2013) ("Examples of specific funds or money that may be the subject of a conversion claim include . . . a specific check or negotiable instrument."); *Unified Servs., Inc. v. Home Ins. Co.*, 460 S.E.2d 545, 549 (Ga. Ct. App. 1995) ("Because the premiums paid by the client to USI were specifically earmarked for remittance to Home, they are sufficiently specific and identifiable to support a conversion action.").

Hix also says the complaint fails to plead he "lawfully obtained" the checks or "convert[ed] [them] to his own use." (*See* Dkt. 10-1 at 25.) The Court disagrees. Acrisure allegedly found most of the checks in Hix's office and tracked down other checks that showed they were deposited into Hix's bank accounts. (Dkt. 4 at 32–37.) This suggests Hix "obtained" the checks. That he did so "lawfully" is plausible because the checks were addressed to PentaRisk, and Hix was responsible for "all accounting, contracting, insurance brokerage, and other [PentaRisk] matters," including "invoicing clients and processing payments." (*Id.* at 18, 32.) It is also plausible that Hix "convert[ed] [the checks] to his own use" because he deposited them into "secret bank accounts that were unknown to, and beyond the control of, Acrisure." (Dkt. 4 at 31.) Acrisure alleges

37

it was forced to "ma[ke] payments to carriers and brokers on behalf of PentaRisk clients as a result of Hix's misconduct," which suggests Hix failed to get the funds to their intended recipients. (*Id.* at 37.) And, based on these allegations and others, Acrisure reasonably pleads on information and belief that "Hix kept the [funds] for his own financial enrichment." (*Id.* at 32–37.) Acrisure's conversion claim can proceed.[18]

### G.   Permanent Injunctive Relief (Count 7)[19]

Count 7 claims Hix violated Acrisure's "exclusive right [under the APA] to use the name PentaRisk." (*Id.* at 45.)  It seeks "a permanent injunction prohibiting Hix from using the PentaRisk name, or any derivative thereof, and other Acrisure assets in the future." (*Id.*)  Hix says this claim should be dismissed because Acrisure has not pled a violation of the APA or that it will suffer imminent and irreparable harm. (Dkts. 10-1 at 25–26; 22 at 15–16.)  The Court agrees.

---

[18] Hix also says the complaint fails to allege "demand for possession, and refusal to surrender the [checks]." (Dkt. 22 at 14.)  This argument may have merit.  But Hix asserts it only in his reply brief.  So the Court declines to consider it.

[19] Acrisure cites Georgia law in support of this claim. (Dkt. 20 at 31; *see also id.* at 18 n.5.)  So the Court assumes Georgia law applies.  But the result would be the same under virtually any other law in the United States, including Michigan or federal law.

Count 7 is based on the breach of contract alleged in Count 2: namely, that Hix violated Section 1.1 of the APA by using bank accounts with the word "PentaRisk" in the account name.  The Court has already dismissed Count 2 for failure to plead a breach.  "With the underlying damages claim gone, the claim[] for . . . injunctive relief should be dismissed as well."  *Harden v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 11334017, at \*3 (N.D. Ga. Aug. 6, 2008); *see Matthew Focht Enterprises, Inc. v. Lepore*, 2013 WL 4806938, at \*8 (N.D. Ga. Sept. 9, 2013).

"An injunction is a harsh remedy, and the movant must clearly establish the right to such relief."  *Deerlake Homeowners Ass'n, Inc. v. Brown*, 864 S.E.2d 202, 205 (Ga. Ct. App. 2021).  Indeed, "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or is more dangerous in a doubtful case, than the issuing of an injunction."  *Cathcart Van & Storage Co. v. City of Atlanta*, 151 S.E. 489, 490 (Ga. 1930).  Such relief is appropriate only in "clear and urgent cases" where "the injury is imminent and irreparable and there is no adequate remedy at law."  O.C.G.A. § 9-5-8; *Lue v. Eady*, 773 S.E.2d 679, 686–87 (Ga. 2015).

Acrisure has not pled imminent or irreparable harm here. The complaint alleges "Hix has continued to use the name PentaRisk for his own purposes and to the detriment of Acrisure"; "Hix's continued or further use of the name PentaRisk and other Acrisure assets would irreparably harm Acrisure"; and "Acrisure has no adequate remedy at law to prevent Hix's continued use of the name PentaRisk and other Acrisure assets." (Dkt. 4 at 45; *see* Dkt. 20 at 31.) But these allegations are impermissibly vague and conclusory. So the Court disregards them. Nothing else in the complaint suggests Hix is still using PentaRisk-named accounts, much less that he is harming Acrisure by doing so or that any such harm is irreparable. Indeed, the latest misconduct alleged in the complaint occurred in August 2020. And Acrisure fired Hix a month later. That was almost *two years ago*. Nothing has happened since, or at least Acrisure has not alleged that anything has happened since that time. Hix no longer works for Acrisure, no longer handles the company's clients or payments, and (as far as we know) is not holding himself out to the public as an Acrisure representative. Thus, Acrisure has not stated a plausible claim for permanent injunctive relief. And Count 7 is dismissed.

### H.    Punitive Damages and Attorneys' Fees (Counts 8–9)

Counts 8–9 assert claims for punitive damages and attorneys' fees. Hix says these claims should be dismissed "[o]nce all of the foregoing substantive counts are dismissed." (Dkt. 10-1 at 26.)  Maybe so.  But the Court has not yet dismissed "all" of Acrisure's other claims.  So Counts 8–9 can proceed for now.

### I.    Leave to Amend

Acrisure's response brief includes a vague, perfunctory request to amend its counterclaims in the event the Court grants any portion of Hix's motion to dismiss.  (Dkt. 20 at 25 n.10, 31.)  Hix says this request is improper.  (Dkt. 22 at 16–17.)  The Court agrees.

"Filing a motion is the proper method to request leave to amend a complaint." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).  Even then, the motion must "(1) set forth the substance of the proposed amendment, or (2) attach a copy of the proposed amendment to the motion." *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 902 (11th Cir. 2020).  "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).

Acrisure has not filed a motion to amend.  Nor has it "attach[ed] the proposed amendment or set forth the substance of the proposed amendment, as required." *My24HourNews.com, Inc. v. AT&T Corp.*, 791 F. App'x 788, 803 (11th Cir. 2019).  It did not even do these things after Hix pointed out it was required to do them under settled law.  All Acrisure has done is embed a "cursory and conditional request to amend in [its] response in opposition to [Hix's] motion to dismiss." *Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009).  That is insufficient.  *Id.* So the Court denies leave to amend as currently requested.  *See Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) ("[Plaintiff] failed to properly move for leave to amend, and the district court soundly rejected the inform request."); *Britton ex rel. U.S. v. Lincare Inc.*, 634 F. App'x 238, 241 (11th Cir. 2015) (district court properly dismissed complaint without leave to amend because plaintiff "failed to set forth how he would amend his complaint to comply with Rule 9(b)").

## IV.   Conclusion

Hix's Motion to Dismiss (Dkt. 10) is **GRANTED IN PART** and **DENIED IN PART**.   The Court dismisses Counts 2–3 (breach of contract), 5 (unjust enrichment), and 7 (permanent injunctive relief). The

Court dismisses portions of Counts 4 (fraud) and 6 (civil theft).  The Court allows Counts 1 (breach of fiduciary duty), 8 (punitive damages), and 9 (attorneys' fees) to proceed.  The Court **DENIES** Hix's request for oral argument on the motion to dismiss (Dkt. 37).[20]

The Court also **DENIES** Acrisure's improperly presented motion to amend.  If Acrisure believes it can cure the pleading deficiencies in its claims for fraud, theft by deception, and unjust enrichment, it may file a proper motion to amend those claims within thirty (30) days from the date of this order.

**SO ORDERED** this 18th day of July, 2022.


_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[20] Hix's motion for oral argument is partly based on his contention that discovery has failed to support Acrisure's counterclaims.  (Dkt. 37 at 2.) But that contention, even assuming it were true, is irrelevant at this stage.  What matters are the pleadings.